UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| **ROSEMARIE DOW, et al.** | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 19-cv-00839 (APM) |
| **HC2, INC., et al.,** | ) ) ) |
| Defendants. | ) ) ) |

# MEMORANDUM OPINION

## I.

### A.

Plaintiffs Rosemarie Dow, Sherry Beshay, Kamaldeep Kohli, Kathy Ludunge, and Evan Stephens bring this action to recover unpaid wages from Defendants HC2, Inc., doing business as Hire Counsel, and PAE Government Services, Inc. ("PAE"). According to the Complaint, each Plaintiff was hired by Defendants to perform work on a long-term document review project for the United States Department of Justice ("DOJ"). Complaint, ECF No. 1 [hereinafter Compl.], ¶ 19. Plaintiffs worked for Defendants pursuant to a subcontract between Hire Counsel and PAE. *Id.* ¶ 20. The prime contract was between PAE and the DOJ. *Id.* The prime contract identified various "Labor Categories," which corresponded to certain "Occupation Codes." *Id.* ¶ 21. The Occupation Codes are set forth in the Register of Wage Determinations Under the Service Contract Act, published by the Department of Labor's Division of Wage Determinations. *Id.* The Register establishes different wage requirements for each Occupation Code. Those requirements were incorporated by reference into the prime contract with the DOJ, the subcontract between Hire Counsel and PAE, and each individual Plaintiff's employment and compensation agreement.

*Id.* ¶ 23. Pursuant to the contracts, Defendants agreed to pay Plaintiffs in accordance with the wage requirements of the Register and to pay the wages that corresponded to each Plaintiff's Occupation Code. *Id.* ¶¶ 24, 27.

Plaintiffs allege, however, that "[d]uring the relevant period, Defendants intentionally misclassified Plaintiffs as performing job duties of a lesser skill and classification than Plaintiffs actually performed." *Id.* ¶ 28. The Complaint identifies in detail the work performed by Plaintiffs, the classifications Plaintiffs believe they were entitled to, and the amount of backpay and overtime wages they claim is due to them. *Id.* ¶¶ 34–58. "By misclassifying [them]," Plaintiffs contend, "Defendants wrongly and intentionally paid Plaintiffs lower hourly rates corresponding with the false and less sophisticated Occupational Code classifications." *Id.* ¶ 29. Accordingly, "Defendants now owe Plaintiffs unpaid wages for all hours worked equal to the difference between the lower hourly rate Defendants paid Plaintiffs and the hourly rate Defendants were contractually obligated to pay Plaintiffs for the proper Occupational Code and classification for the actual work each Plaintiff performed." *Id.* ¶ 30.

B.

On March 25, 2019, Plaintiffs filed suit in this court, seeking damages for violations of the District of Columbia Wage Payment and Wage Collection Act ("DCWPA") and the Federal Fair Labor Standards Act ("FLSA"). Compl. ¶¶ 59–76. Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, arguing that administrative relief through the Department of Labor is Plaintiffs' exclusive remedy. More specifically, Defendants assert that the court "cannot grant the[] requested relief without deciding whether [Plaintiffs] were classified in the correct labor categories under the [Service Contract Act], and Congress has vested the Secretary of Labor with exclusive authority to make those

2

determinations." Defs.' Mem. in Supp. of Defs' Mot. to Dismiss, ECF No. 5-1 [hereinafter Defs.' Mot.], at 6.

For the reasons that follow, the court agrees with Defendants and grants their Motion to Dismiss.

## II.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). At the motion to dismiss stage, the court must accept as true a plaintiff's well-pleaded factual contentions and draw all reasonable inferences, but it need not accept thread-bare recitals of the elements of standing or legal conclusions disguised as factual allegations. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). Factual allegations are not required to be "detailed," but they must be more than "an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

## III.

The sole issue before the court is whether Plaintiffs' claims are properly raised here, or whether instead they should be submitted for administrative review before the Department of Labor. The McNamara-O'Hara Service Contract Act ("SCA") sets forth labor standards applicable to service contracts with the federal government. *See* 41 U.S.C. §§ 6701–6707. The SCA requires such contracts "to contain minimum wage provisions for each class of service employees in the performance of the contract." *Danielsen v. Burnside-Ott Aviation Training*

3

*Center, Inc.*, 941 F.2d 1220, 1223 (D.C. Cir. 1991). "[T]he statute requires the Secretary of Labor to make a determination of the applicable minimum wages and fringe benefits based on prevailing rates in the locality of the performance of the contract." *Id.* The regulations adopted pursuant to the SCA contain an exhaustive scheme for "interested parties" to seek administrative reconsideration of wage determinations. *See id.*[1]

Defendants argue that the D.C. Circuit's decision in *Danielsen* controls the outcome of this case. Defs.' Mot. at 2, 6–8. In *Danielsen*, the D.C. Circuit addressed whether violations of the SCA could "give rise to a private civil action under [the Racketeer Influenced and Corrupt Organizations Act ("RICO")] in addition to the remedies provided under the SCA," and held that they could not. 941 F.2d at 1227. There, employees of service corporations contracting with the United States brought claims under RICO, challenging their classifications as "technicians" in several contracts and arguing that they were due backpay for any misclassifications. *Id.* at 1224–26. The circuit court held that "the implication of a private right under the SCA would undercut the specific remedy prescribed by Congress." *Id.* at 1228 (citing *Miscellaneous Service Workers, Local 427 v. Philco-Ford Corp.*, 661 F.2d 776, 781 (9th Cir. 1981)). The Department of Labor alone could decide, in the first instance, whether the classifications were proper. *See id.*

Just over a decade after deciding *Danielsen*, the D.C. Circuit reaffirmed its holding, albeit in a different context, in *C&E Services, Inc. of Washington v. District of Columbia Water and Sewer Authority*. In *C&E Services*, the plaintiff, a losing bidder for a District of Columbia government contract, challenged the city's refusal to award it the contract under the Due Process

---

[1] A final decision by the Secretary of Labor as to an employer's alleged misclassification of an employee is likely judicially reviewable under the APA. *See generally C&E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) ("Under the SCA, the Department of Labor's administrative determinations are judicially reviewable."); *see also Fed. Food Serv., Inc. v. Donovan*, 658 F.2d 830, 833–34 (D.C. Cir. 1981); *Colo. Sec. Agency, Inc. v. U.S.*, No. 91—1981 TFH/DAR, 1992 WL 415388 (D.D.C. July 13, 1992), *aff'd*, No. 92-5298, 1993 WL 267489 (D.C. Cir. 1993). *See also* 41 U.S.C. §§ 6507, 6707.

Clause and the SCA.[2] 310 F.3d 197, 198 (D.C. Cir. 2002). The plaintiff sought a declaratory judgment that the defendant had violated the SCA by requiring bidders to offer wages under a different federal statue, the Davis-Bacon Act ("DBA"), instead of the SCA. *See id.* at 201. The court reaffirmed that "the SCA creates no private remedy" in the federal courts. *Id.* (internal quotation marks omitted). "Instead, disputes arising under the SCA must be resolved, in the first instance," the court held, "by 'the statutory scheme for administrative relief set forth by Congress in the SCA' and administered by the Department of Labor." *Id.* (quoting *Danielsen*, 941 F.2d at 1226). The court reiterated that a "judicial declaration telling [the District of Columbia Water and Sewer Authority] how to interpret the SCA would constitute an end-run around Congress's clear intent that the Department of Labor interpret and enforce the SCA in the first instance." *Id.*

This case is squarely controlled by the holdings in *Danielsen* and *C&E Services*. Like the plaintiffs in *Danielsen*, Plaintiffs' claims here are premised on the allegation that their employer made a "misdetermination of classification." *Danielsen*, 941 F.2d at 1228. Plaintiffs insist that the work they did for Defendants was commensurate with a different classification under the SCA. *See* Compl. ¶¶ 28–30. Plaintiff Dow, for example, says her job duties corresponded "to the Law Clerk II labor category rather than the Law Clerk I or Senior Paralegal labor categories." *Id.* ¶ 35. Similarly, Plaintiffs Beshay, Kohli, Ludunge, and Stephens claim that their work "correspond[ed] to the Law Clerk I category, not the Senior Paralegal labor category." *Id.* ¶ 40. All Plaintiffs tie their damages to the alleged proper Occupation Code classification. "Defendants now owe Plaintiffs unpaid wages for all hours worked equal to the difference between the lower hourly rate Defendants paid Plaintiffs and the hourly rate Defendants were contractually obligated to pay Plaintiffs for the proper Occupational Code and classification for the actual work each Plaintiff

---

[2] Contracts with the District of Columbia are covered by the SCA. *See* 42 U.S.C. § 6702(a)(1).

5

performed." *Id.* ¶ 30. Thus, just as in *Danielsen*, Plaintiffs effectively allege violations of the SCA that must be raised in the first instance with the Department of Labor. *Danielsen* therefore controls this case.

Plaintiffs attempt to distinguish *Danielsen*, arguing that unlike the workers there, "Plaintiffs do not argue that they should be reclassified based on their qualifications. Instead, Plaintiffs seek compensation for work actually performed in conformity with the . . . classifications Defendants contracted for." Pls.' Mem. in Opp'n to Defs.' Mot., ECF No. 9 [hereinafter Pls.' Opp'n], at 8. But that effort to differentiate *Danielsen* misreads it. *Danielsen* was not about whether the plaintiffs' *qualifications* compelled placement in a different compensation category. Indeed, the word "qualification" nowhere appears in the opinion. Rather, the case was about proper classification based on the *work* performed. There, the employees sought to hold their employers accountable under RICO for misclassifying them "as 'technicians'" when they "should have been classified as 'aircraft workers' and paid the corresponding higher wage." *Danielsen*, 941 F.2d at 1225; *see also id.* (noting as to a different contract "a dispute arose over the classification of 'technicians' proposed by the contract for service employees *performing* aircraft maintenance" (emphasis added)). So, too, here. Plaintiffs contend, based on the actual job duties they performed, Compl. ¶¶ 35, 41, that "Defendants wrongly and intentionally paid Plaintiffs lower hourly rates corresponding with the false and less sophisticated Occupational Code classifications," *id.* ¶ 29. *Danielsen* forbids such a claim from being brought, in the first instance, as a private cause of action in federal court. Plaintiffs can no more bypass a decision by the

6

Department of Labor by invoking the FLSA and District of Columbia law than the plaintiffs in *Danielsen* attempted to do by asserting RICO claims.[3]

IV.

Plaintiffs also attempt to avoid the strictures of *Danielsen* by likening their case to *Garcia v. Skansa USA Building, Inc.*, 324 F. Supp. 3d 76 (D.D.C. 2018). *See* Pls.' Opp'n at 10–12. In *Garcia*, the defendants "agreed to hire and pay Garcia 'as a carpenter'" for various public building projects in the District of Columbia. 324 F. Supp. 3d at 78. Garcia understood this to mean that he would be paid at least the prevailing wage for a carpenter set by the Department of Labor under the DBA. *Id.* The employers' contracts with the District also specified that "workers on these projects would be paid the appropriate prevailing wage." *Id.* For a number of years, however, Garcia was paid hourly wages below the prevailing wage for a carpenter. *Id.* Garcia sued to recover overtime wages and backpay under the FLSA and District of Columbia law. *Id.* at 78. The defendants moved to dismiss the case, arguing that the DBA's administrative remedial scheme foreclosed Garcia's claims. *Id.* The *Garcia* court denied the motion. *Id.* at 85.

*Garcia* is easily distinguishable from the present case for two reasons. First, *Garcia* is more properly viewed as a contracts case. "Garcia allege[d] that the employers . . . agreed to hire and pay him 'as a carpenter.'" *Id.* at 84. He understood that to mean "'he would be paid at least the legal prevailing wage for a carpenter.' That the DBA may have provided the basis for the

---

[3] Plaintiffs spend a lot of ink asserting that the SCA does not "preempt" Plaintiffs' wage claims under the FLSA and District of Columbia law. Pls.' Opp'n at 12–24. The court need not address these arguments, as Defendants do not raise preemption in their motion. Moreover, the issue here is not whether the SCA preempts recovery of unpaid wages under a different federal or state statute, but whether Plaintiffs must first seek a determination with the Department of Labor as to an alleged employee misclassification. Whether an employee can seek remedies under a federal or state wage statute following a classification decision by the Department of Labor is a question for another day.

7

parties' alleged 'underst[anding]' does not transform the agreement into anything other than an ordinary contract . . . ." *Id.* (alterations in original). On that reading, "Garcia [was] not suing for the DBA-mandated rates *per se*, but rather for the rates his employers agreed to pay him." *Id.* Not so here. The crux of Plaintiffs' claim is that Defendants "intentionally misclassified" Plaintiffs, and, as a result, Defendants now owe Plaintiffs the difference between what they were paid and what they should have been paid if they were properly classified. Compl. ¶¶ 28, 30. Thus, unlike *Garcia*, this cannot be treated as a mere breach of contract action.[4]

Second, in *Garcia*, "there [was] no dispute over worker classifications or corresponding rates." *Garcia*, 324 F. Supp. 3d at 85. Garcia alleged that "both parties understood him to be hired 'as a carpenter.'" *Id.* In fact, the *Garcia* court acknowledged that "employee classification, along with the corresponding prevailing wage-setting, is the province of the Department of Labor," and that, unlike a misclassification case, "Garcia's claims would not require any classification or wage-setting decisions of the kind Congress has reserved for the Department of Labor." *Id.* at 84–85. Therefore, Garcia's claims did not arise under the SCA and accordingly were not controlled by the *Danielsen* decision. Here, of course, the nub of the parties' dispute is the proper classification of Plaintiffs. Plaintiffs' case is exactly what Garcia's was not—at the outset, it requires a decision on proper employee classification. Plaintiffs' remedy therefore lies with the Department of Labor.

---

[4] Defendants attached the relevant contracts to their reply brief, but the court need not consider them to resolve the motion.

V.

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 5, is granted. A final, appealable Order accompanies this Memorandum Opinion.

Dated: November 13, 2019

Amit P. Mehta
United States District Court Judge